IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

UNITED STATES OF AMERICA,

vs.                                    Case Nos.:    4:12cr17/RH/GRJ
                                                     4:16cv9/RH/GRJ

KENNETH L. BARBER

_____

## <u>ORDER, REPORT AND RECOMMENDATION</u>

This matter is before the court upon a "Motion under 28 U.S.C. §
2255 to Vacate, Set Aside, or Correct Sentence by a person in Federal
Custody," supporting affidavit and memorandum of law filed by Petitioner
Kenneth L. Barber.   (ECF No. 247-249.)   The Government filed a
response (ECF No. 254), and Petitioner filed a reply.    (ECF No. 258.)
Petitioner also filed a Motion for Preference (ECF No. 269), and a Motion
for Leave to Amend his § 2255 Motion (ECF No. 271.)    This case was
referred to the undersigned for the issuance of all preliminary orders and
any recommendations to the district court regarding dispositive matters.
*See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P.
72(b).    After a review of the record and the arguments presented, the
undersigned concludes that Petitioner has not raised any issue requiring an

evidentiary hearing and that the § 2255 motion should be denied.   *See*

Rules 8(a) and (b) Governing Section 2255 Cases.

## BACKGROUND

Petitioner Kenneth L. Barber and co-defendant Shavita Altrecia Davis
were charged in a 58-count superseding indictment.   (ECF No. 43.)   The
indictment alleged that Barber owned and operated tax preparation firms
that employed Ms. Davis.   Count One charged the defendants with
conspiring to commit tax fraud—by submitting false federal income tax
returns for a number of taxpayers—in violation of 18 U.S.C. § 371.   The
other 57 counts charged substantive offenses.   Counts 2 through 34
charged filing false federal income tax returns in violation of 18 U.S.C. §
7206(2).   Barber was charged in Counts 7, 8, 12, 16, 17, 21, and 32.
Counts 35 through 53 chargeD wire fraud—the electronic filing of false
federal income tax returns—in violation of 18 U.S.C. § 1343.   Barber was
charged in Counts 37, 44, 45, and 47.   Counts 54 and 55 charged Ms.
Davis with aggravated identify theft in violation of 18 U.S.C. § 1028A(a)(1).
Counts 56 through 58 charged Barber with bank fraud—the submission of
his own false federal income tax returns in support of loan applications—in

violation of 18 U.S.C. § 1014.    Barber and Davis were jointly charged only in Counts 1 and 8 of the superseding indictment.

On August 7, 2012, the Office of the Federal Public Defender was appointed to represent Barger, and Clifford Davis appeared in his behalf.

On December 21, 2012, Mr. Clifford moved to sever Counts 56, 57 and 58, which related to Barber's use of fraudulent tax returns as proof of income. (ECF No. 93.)   The Government responded in opposition, and the court denied the motion on April 2, 2013.   (ECF Nos. 98, 142.)

In January of 2013, the court entered an order setting the cases for separate trials. Ms. Davis' trial was scheduled first, but she entered a guilty plea during her trial in February of 2013.   (ECF No. 124.)

Barber's three-day trial took place in April of 2013.   The jury found Barber guilty of Counts 1, 7, 12, 16, 17, 21, 32, 37, 44, 45, 47, 56, 57, and 58 of the superseding indictment.   (ECF No. 157.)   Count 8 was dismissed upon Government motion at sentencing.   (ECF No. 192.)

The Final Presentence Investigation Report ("PSR") determined that Barber had a total offense level of 27 and a criminal history category of III. The applicable guidelines range was 87 to 108 months.   However, there

was a statutory maximum sentence of 60 months as to Count 1 and 36 months as to Counts 7, 12, 16, 17, 21 and 32.   (ECF No. 189, PSR ¶¶ 109, 110).

The court sustained a defense objection to the adjustment for use of an authentication feature, which brought the total offense level to 25, and the applicable guidelines range to 78 to 87 months.   (ECF No. 189, PSR ¶ 58; ECF No. 207 at 23, 29). The Court sentenced Barber to concurrent terms of 60 months on Count 1, 36 months on Counts 7, 12, 16, 17, 21 and 32, and 87 months on Counts 37, 44, 45, 47, 56, 57, 58.   (ECF No. 195.)   The total 87-month sentence was at the top of the applicable guidelines range.   The Court subsequently entered a restitution order directing Barber to pay the Internal Revenue Service $124,938.00 in accordance with the parties' restitution stipulation, and another order noting that the obligation was partly joint and several with his co-defendants.   (ECF Nos. 209, 210, 215.)

Barber appealed, challenging the sufficiency of the evidence as to all of his convictions, the district court's denial of his motion to sever the false-statement counts, the application of the role adjustment, and the loss calculation.   (ECF No. 240.)   After a thorough review, the Eleventh Circuit

affirmed on December 2, 2014.   Barber's petition for a writ of certiorari was
denied on May 5, 2015.

Barber timely filed the instant motion in January of 2016.   (ECF No.
247.)   He raises fourteen claims in the instant motion, primarily alleging
errors by trial counsel.   The motion also includes a claim of ineffective
assistance of appellate counsel (Ground 5) and Government misconduct/
selective prosecution (Ground 7).

While his § 2255 motion was pending, Barber filed a Motion for Prior
Custody Credit, seeking 71-75 days of credit for time served in custody
before he was sentenced in this case.   (ECF No. 266.)   The district court
denied the motion and Barber appealed.   (ECF Nos. 270, 272, 276).
Resolution of that appeal will have no bearing upon the instant motion.

## <u>STATEMENT OF FACTS</u>[1]

A tax preparer who wants to electronically file tax returns for clients
must obtain an Electronic Filing Identification Number ("EFIN") from the
IRS.   Barber's application for an EFIN for his tax preparation business,
Kenneth Barber & Associates ("KBA") was denied in September of 2005.

---

[1] This brief synopsis is taken from the Eleventh Circuits' more detailed recitation of the facts and evidence at trial. (ECF No. 240.)

Two weeks later Barber's daughter applied and was approved for an EFIN

for her tax preparation business, KLB Group Developers, Inc. ("KLB

Group").   Barber's daughter contracted out KLB Group's business to

Barber, and all of the fraudulent tax returns submitted by Barber's business

were filed using KLB Group's assigned EFIN.

Barber operated both KLB Group and KBA, hired multiple employees

to work in his office as tax return preparers, including co-defendants

Shavita Davis, Anthony Barber and others, all of whom testified against him

at trial.

During Davis' employment with Barber, Barber taught her many ways

to fraudulently increase the amount of clients' refunds.   He also asked

Davis to train other employees how to prepare false returns.   Clients

whose returns contained false information were charged higher fees, and if

they questioned the fees, Barber told Davis to tell them not to complain

because they didn't make money anyway.

Anthony Barber estimated that during the three years he worked for

Barber, of the 500 to 1000 tax returns prepared on a yearly basis, about 90

percent of them were false. He testified that Barber had told him to have

Davis teach him "how to hustle," which was the practice of selling a false
dependent listed on the tax form to increase the refund.   Once Anthony
Barber was proficient in preparing tax forms, Barber asked him to train
other employees how to prepare false returns.

In 2007 IRS agent Timothy Evans conducted a scheduled compliance
check on KLB and KBA.   He reviewed 100 files and noticed a high number
of returns listing HSH income, which is derived from working in someone's
home and is not very commonly reported.   Barber told Evans that self-
employment income should be reported as Schedule C income.
Reporting HSH income instead of Schedule C income generates a much
higher refund.   Evans noticed multiple irregularities in the business and
ultimately his business was fined.

After this, Barber instructed Davis and Anthony Barber to stop using
false HSH income and instead use false Schedule C income and
expenses.

In January of 2009, Evans conducted an unannounced compliance
check on KLB and KBA and again met with Barber.   During this visit,
Evans did not see any suspicious HSH income but noticed that many

returns listed unsupported Schedule C income.   Following this visit, Evans referred Barber to the IRS's criminal investigations unit.

On November 13, 2009, agents executed a search warrant at one of Barber's offices and seized 55 boxes of client files and business records as well as Barber's individual and corporate tax returns.   Shortly thereafter, Barber arranged for another individual to take over his tax preparation business.   After the execution of the lease, Barber continued to maintain an office nearby, interact with clients and participate in the preparation of fraudulent returns.

During the criminal investigation, the IRS reviewed copies of Barber's own tax returns and learned that he had submitted his individual and corporate tax returns to apply for business loans. The IRS discovered that the tax returns Barber had submitted to apply for the loans did not match the tax returns filed with the IRS.   The IRS did not know which of the two versions, if either, was a correct reflection of his income during the years in question.

## ANALYSIS

### General Standard of Review

"Section 2255 does not provide a remedy for every alleged error in conviction and sentencing." *Spencer v. United States*, 773 F. 3d 1132, 1138 (11th Cir. 2014). Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that it must be shown that the

alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal.   *Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014); *Rozier v. United States*, 701 F.3d 681, 684 (11th Cir. 2012); *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994).   Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255.   *Nyhuis*, 211 F.3d at 1343 (quotation omitted).   Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised.   *Sanders v. United States*, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Because a motion to vacate under section 2255 is not a substitute for direct appeal, issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered

procedurally barred.   *Lynn*, 365 F.3d at 1234–35; *Bousley v. United States*, 523 U.S. 614, 621 (1998); *McKay v. United States*, 657 F.3d 1190, 1195 (11th Cir. 2011).   An issue is "'available' on direct appeal when its merits can be reviewed without further factual development."   *Lynn*, 365 F.3d at 1232 n.14 (quoting *Mills*, 36 F.3d at 1055).   Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent."   *Lynn*, 365 F.3d at 1234; *Bousley*, 523 U.S. at 622 (citations omitted).   To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct."   *Lynn*, 365 F.3d at 1235.   A meritorious claim of ineffective assistance of counsel can constitute cause.   *See Nyhuis*, 211 F.3d at 1344.

Ineffective assistance of counsel claims generally are not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of

whether they could have been brought on direct appeal.    *Massaro v. United States*, 538 U.S. 500, 503 (2003); *see also United States v. Franklin*, 694 F.3d 1, 8 (11th Cir. 2012); *United States v. Campo*, 840 F.3d 1249, 1257 n.5 (11th Cir. 2016).   To prevail on a constitutional claim of ineffective assistance of counsel, a petitioner must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Williams v. Taylor*, 529 U.S. 362, 390 (2000); *Darden v. United States*, 708 F.3d 1225, 1228 (11th Cir. 2013).

In applying *Strickland*, the court may dispose of an ineffective assistance claim if a petitioner fails to carry his burden on either of the two prongs.   *Strickland*, 466 U.S. at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013); *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was

reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688; *see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007).   Reviewing courts are to examine counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Hammond v. Hall*, 586 F.3d 1289, 1324 (11th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689); *see also Chandler v. United States*, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").   Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight.   *Strickland*, 466 U.S. at 689.   To show counsel's performance was unreasonable, a petitioner must establish that "no competent counsel would have taken the action that his counsel did take."   *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler*, 218 F.3d at 1315.   "[T]he fact that a particular defense ultimately proved to be unsuccessful [does not] demonstrate ineffectiveness."   *Chandler*, 218

F.3d at 1314.   When reviewing the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect."   *Chandler*, 218 F.3d at 1316 n.18.

To establish prejudice, petitioner must show that, but for counsel's deficient performance, the outcome of the proceeding would have been different.   *Strickland*, 466 U.S. at 694.   "The likelihood of a different result must be substantial, not just conceivable."   *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (quoting *Strickland*).   For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him."   *Lockhart v. Fretwell*, 506 U.S. 364, 369–70 (1993); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir. 2010).   A petitioner therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."   *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687). Or in the case of alleged sentencing errors, he must demonstrate that there

is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in his offense level.   *Glover v. United States*, 531 U.S. 198, 203–04 (2001).   A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance."   *Id.* at 203.

To establish ineffective assistance, a petitioner must provide factual support for his contentions regarding counsel's performance.   *Smith v. White*, 815 F.2d 1401, 1406–07 (11th Cir. 1987).   Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test.   *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012); *Garcia v. United States*, 456 F. App'x 804, 807 (11th Cir. 2012) (*citing Yeck v. Goodwin*, 985 F.2d 538, 542 (11th Cir. 1993)); *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (*citing Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). Furthermore, counsel is not constitutionally deficient for failing to preserve or argue a meritless claim.   *Denson v. United States*, 804 F.3d 1339, 1342

(11th Cir. 2015) (citing *Freeman v. Attorney General, Florida*, 536 F.3d 1225, 1233 (11th Cir. 2008)).   This is true regardless of whether the issue is a trial or sentencing issue.   *See, e.g.*, *Sneed v. Florida Dep't of Corrections*, 496 F. App'x 20, 27 (11th Cir. 2012) (failure to preserve meritless *Batson* claim not ineffective assistance of counsel);   *Lattimore v. United States*, 345 F. App'x 506, 508 (11th Cir. 2009) (counsel not ineffective for failing to make a meritless objection to an obstruction enhancement); *Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between."   *Chandler*, 218 F.3d at 1313.   This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted.   *Dingle*, 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000).   "Even if counsel's decision appears to have

been unwise in retrospect, the decision will be held to have been ineffective

assistance only if it was 'so patently unreasonable that no competent

attorney would have chosen it.'"    *Dingle*, 480 F.3d at 1099 (quoting *Adams*

*v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)).   The Sixth Circuit

has framed the question as not whether counsel was inadequate, but rather

whether counsel's performance was so manifestly ineffective that "defeat

was snatched from the hands of probable victory."    *United States v.*

*Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).   Regardless of how the

standard is framed, under the prevailing case law it is abundantly clear that

a moving party has a high hurdle to overcome to establish a violation of his

constitutional rights based on his attorney's performance.   A petitioner's

belief that a certain course of action that counsel failed to take might have

helped his case does not direct a finding that counsel was *constitutionally*

*ineffective* under the standards set forth above.

An evidentiary hearing is unnecessary when "the motion and files and

records conclusively show that the prisoner is entitled to no relief."    *See* 28

U.S.C. § 2255(b); *Rosin*, 786 F.3d at 877; *Gordon v. United States*, 518

F.3d 1291, 1301 (11th Cir. 2008).   Not every claim of ineffective

assistance of counsel warrants an evidentiary hearing.   *Gordon*, 518 F.3d

at 1301 (citing *Vick v. United States*, 730 F.2d 707, 708 (11th Cir. 1984)).

To be entitled to a hearing, a defendant must allege facts that, if true, would

prove he is entitled to relief.   *See Hernandez v. United States*, 778 F.3d

1230, 1234 (11th Cir. 2015).   A hearing is not required on frivolous claims,

conclusory allegations unsupported by specifics, or contentions that are

wholly unsupported by the record.   *See Winthrop–Redin v. United States*,

767 F.3d 1210, 1216 (11th Cir. 2014) (explaining that "a district court need

not hold a hearing if the allegations [in a § 2255 motion] are . . . based upon

unsupported generalizations") (internal quotation marks omitted); *Peoples*

*v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004).   Even affidavits that

amount to nothing more than conclusory allegations do not warrant a

hearing.   *Lynn*, 365 F.3d at 1239.   Finally, disputes involving purely legal

issues can be resolved by the court without a hearing.

## Petitioner's Claims

### *Ground One—Failure to Unseal Documents*

Barber first claims that the Government violated his constitutional

rights for failing to unseal certain documents.   He references his

previously filed "Emergency Motion to Unseal Documents." (ECF No. 243.)

In that document, Barber requested copies of the (unredacted) superseding

indictment and jury verdict, the Statement of Reasons, and counsel's

motion for payment of fees.   The district court denied the motion, finding

no basis for the disclosure of any of the requested documents.   (ECF No.

244.)   Barber's argument involves neither his constitutional rights nor a

complete miscarriage of justice, such that his claim is not cognizable under

§ 2255 and it should be denied.

In his memorandum, Barber references client files that were seized

from his tax office and claims that the Government violated his rights under

*Brady* and *Giglio* when the Government did not disclose these files to him.[2]

In *Brady v. Maryland*, the Supreme Court held that the suppression

by the prosecution of evidence favorable to the accused upon request

violates due process where the evidence is material either to guilt or to

punishment, irrespective of the good faith or bad faith of the prosecution.

*Brady*, 373 U.S. 83, 87 (1963).   It is no longer imperative that there be a

---

[2] The Government's response addressed Barber's claim as though he was suggesting only that the failure to unseal certain documents he requested constituted the *Brady* and *Giglio* violations.   (ECF No. 254 at 12-14.)

Case Nos.: 4:12cr17/RH/GRJ; 4:16cv9/RH/GRJ

request for the production of such evidence.    *Kyles v. Whitley*, 514 U.S.

419, 433–34 (1995); *see also United States v. Scheer*, 168 F.3d 445, 451

(11th Cir. 1999) (material favorable, exculpatory or impeachment evidence

must be produced regardless of request).    A successful *Brady* violation

claim requires a showing that: (1) the prosecution possessed evidence

favorable to the accused (including impeachment evidence); (2) the

defendant did not possess the evidence nor could he have obtained it

himself with any reasonable diligence; (3) that the prosecution suppressed

the favorable evidence; and (4) had the evidence been revealed to the

defense, there is a reasonable probability that the outcome of the

proceedings would have been different.    *United States v. Simms*, 385 F.3d

1347, 1357 (11th Cir. 2004).

In *Giglio v. United States*, the Supreme Court held that the

government's failure to correct false testimony that its key witness (the

defendant's coconspirator) had received no promise of nonprosecution in

exchange for his testimony, as well as the prosecutor's false statement to

this effect in closing argument, required that the defendant be granted a

new trial.    *Giglio*, 405 U.S. 150 (1972).    The Court explained that

"deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with rudimentary demands of justice." *Id.* at 153 (citation and internal quotation marks omitted).   "*Giglio* error, a species of *Brady* error, occurs when the *undisclosed evidence* demonstrates that the prosecution's case included perjured testimony and that the prosecution knew, or should have known, of the perjury." *Ford v. Hall,* 546 F.3d 1326, 1331 (11th Cir. 2008) (quotations omitted and emphasis added).   To obtain relief on his *Giglio* claim, Barber must "prove: (1) the prosecutor knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony; and (2) such use was material, i.e., that there is any reasonable likelihood that the false testimony could have affected the judgment." *Trepal v. Sec'y, Fla. Dep't of Corr.*, 684 F.3d 1088, 1107–08 (11th Cir. 2012) (internal quotation marks omitted).

Barber claims that the Government "withheld exculpatory evidence" favorable to the defense, in not "revealing" the contents of the client files that it had seized from his office.   Counsel, he maintains, was ineffective when he failed to uncover the exonerating evidence or conduct an effective independent investigation.   The unspecified evidence originated in

Barber's own files.    He has not shown that either a *Brady* or *Giglio*

violation occurred.

### Ground Two

Barber contends that counsel was constitutionally ineffective because

he did not object to an allegedly illegal, warrantless search of his tax office

conducted by IRS Agents in January of 2009.    The incident in question

was the second IRS compliance examination of Barber's office.    The first

compliance check, conducted by Timothy Evans in December of 2007,

revealed a significant number of irregularities in the manner in which

"household help income" was reported on client tax returns.    After the

compliance check, Barber instructed his employees to report the household

help income as Schedule C income.

In January of 2009, Evans conducted a second compliance

examination to check on electronic return originator compliance. (ECF No.

204 at 30.)    As is customary, this check was unannounced.    Evans

testified at trial that such compliance checks are a condition of being

granted an EFIN (electronic filing identification number), which is necessary

for a professional tax preparer to electronically file tax returns.    (ECF No.

204 at 16-19; IRS Pub. 3112).   By participating in the IRS e-file program, Barber's business was subject to compliance checks to ensure it was following the standards required by the program.   The routine compliance checks were not part of a criminal investigation and as such did not implicate the Fourth Amendment. It was only after the second compliance check that Evans made a referral to the criminal investigations unit.   (ECF No. 204 at 36.)

Barber asserts that, contrary to Evans' sworn testimony, Evans made "criminal accusations related to the misuse of authorized dependents" at the beginning of the second compliance check.   (ECF No. 258 at 5.)   He asserts that the compliance check was "clearly criminal," offering as proof that the criminal referral was a direct result of the second monitoring visit. (ECF No. 258 at 6.)

When counsel's alleged ineffectiveness involves a failure to competently litigate a Fourth Amendment claim, to demonstrate actual prejudice, the petitioner must prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence.   *Kimmelman v.*

*Morrison*, 477 U.S. 365, 375 (1986); *Green v. Nelson*, 595 F.3d 1245, 1251-52 (11th Cir. 2010).   Defense counsel is not constitutionally ineffective for failing to make a meritless Fourth Amendment challenge. Here, the trial testimony establishes that the criminal referral did not occur until after Evans learned that irregularities continued in Barber's tax preparation business.   The fact that Evans arguably could have made a criminal referral after the first compliance check, as noted by the court at sentencing, is irrelevant.   (ECF No. 207 at 46.)   Counsel's performance was not deficient, and Barber is not entitled to relief.

### *Grounds Three and Fourteen*

In Grounds Three and Fourteen Barber alleges that counsel was constitutionally ineffective because he did not move for dismissal of Counts 32, 37, and 47 of the indictment based on the statute of limitations.   In Ground Fourteen, Barber further asserts that counsel was ineffective for not bringing to the court's attention that the superseding indictment filed June 6, 2012 was the controlling document and that Counts 37 and 47 should have been dismissed based upon the expiration of the five-year statute of limitations period.   Barber's position is without merit.

Case Nos.: 4:12cr17/RH/GRJ; 4:16cv9/RH/GRJ

Count 32, which was Count 33 of the original indictment, alleged a

violation of 26 U.S.C. § 7206(2), which has a six-year statute of limitations.

26 U.S.C. § 6531(3).   The statute of limitations for filing a false tax return

generally starts on the day the return is filed, except if the return is filed

early, in which event the statute of limitations does not start to run until the

statutory due date.   *United States v. Habig*, 390 U.S. 222, 223, 225 (1968);

26 U.S.C. § 6513(c)(1).   The statute of limitations on a tax return due on

April 15, 2006 therefore would not have expired until April 15, 2012.   The

original indictment was filed on March 6, 2012, within that limitations period.

Barber argues that the date of the superseding indictment, June 6,

2012 (ECF No. 43) is the date that controls.   However, the Eleventh Circuit

has held that "[a] superseding indictment brought after the statute of

limitations has expired is valid so long as the original indictment is still

pending and was timely and the superseding indictment does not broaden

or substantially amend the original charges."   *United States v. Ratcliff,* 245

F.3d 1246, 1253 (11th Cir. 2001) *(citing United States v. Italiano*, 894 F.2d

1280, 1282 (11th Cir. 1990) (citation omitted); *United States v. Farias*, 836

F.3d 1315 (11th Cir. 2016).   The superseding indictment did not broaden

the indictment.    In fact, Barber was removed from many of the 52 counts in
which he had originally been charged.[3]    Therefore, the superseding
indictment relates back to the initial indictment, and Barber's claim that
counsel was constitutionally ineffective for his failure to argue otherwise is
without merit.

Similarly, neither Count 37 nor Count 47 of the superseding
indictment was barred by the statute of limitations.    Counts 37 and 47,
which were charged as Counts 39 and 51 of the original indictment, are
both wire fraud charges arising under 18 U.S.C. § 1343.    Such charges
are subject to a general five-year statute of limitations under 18 U.S.C. §
3282.    They were both alleged to have occurred on April 13, 2007, less
than five years before the date of the original indictment.    Counsel's
decision not to raise a meritless statute of limitations challenge was not
constitutionally ineffective.

Barber contends in his memorandum, without record citation, that the
court chastised both counsel's ineffectiveness and the prosecutions'
overreach for wrongly charging him.    (ECF No. 249 at 11.)    Because

---

[3] The superseding indictment also removed Anthony Barber after he pled guilty.

Case Nos.: 4:12cr17/RH/GRJ; 4:16cv9/RH/GRJ

Defendant was sentenced on multiple counts to multiple concurrent sentences in this case, the length of his custodial sentence would not have increased if there had been fewer charges.   His allegations contain no basis for relief.

### Ground Four

Barber asserts that counsel was constitutionally ineffective because he did not raise a double jeopardy defense.   He maintains that during the IRS's first compliance examination in December of 2007 he was fined $15,000 for the same conduct eventually charged in the March 6, 2012 indictment, and that the court's imposition of restitution along with the civil fines imposed by the IRS violated the double jeopardy clause.

As an initial matter, the court notes that restitution and fines serve different purposes.   Restitution is intended to make a party "whole," whereas a fine is punitive in nature.   The imposition of restitution and assessment of a fine is not, in and of itself, a double jeopardy violation.

Additionally, the civil penalty that was imposed after the December 2007 compliance examination was not assessed against Barber personally, but rather against KLB Group Developers.   (ECF No. 254, Exh. A).   The

penalties were for "failure to provide preparer's social security number or employer identification number on the return or claim" and "failure to comply with EITC [Earned Income Tax Credit] Due Diligence requirements IRC Sec. 6695(g)." (*Id.*).

Section 6695(g) of the Internal Revenue Code establishes a civil penalty for failing to comply with due diligence requirements for the EITC. The penalty is $500 for each violation.   The due diligence requirements are set forth in Treasury regulation 1.6695-2(b).   They are: (1) completion and submission of Form 8867, (2) computation of credit, (3) knowledge, and (4) retention of records.   These requirements relate to the proper processing of the EITC.   Criminal charges, on the other hand, focus on fraudulent conduct.   As discussed above, all of Barber's criminal charges dealt with fraudulent conduct, rather than the proper computation and record keeping of EITC.   Counsel was not constitutionally ineffective for failing to raise a meritless double jeopardy challenge.

### *Ground Five*

Barber's fifth claim assails the performance of appellate counsel.   He

claims that counsel was constitutionally ineffective for failing to assert on

appeal that neither the loss amount nor the role enhancement were

charged in the indictment and found by the jury beyond a reasonable doubt

in contravention to the Supreme Court's decision in *Alleyne v. United

States*, 133 S. Ct. 2151 (2013).

In *Alleyne*, the Supreme Court held that facts, other than a prior

conviction, which increase the statutory mandatory minimum penalty must

be submitted to a jury and proven beyond a reasonable doubt. *Alleyne*, 133

S. Ct. at 2163.   The *Alleyne* decision does not affect judicial fact finding or

guidelines calculations that do not increase the statutory maximum or

minimum sentences.   *Alleyne*, 133 S. Ct. at 2163; *United States v.

Charles*, 757 F.3d 1222, 1225 (11th Cir. 2014).

The guidelines adjustments for loss amount and Barber's role in the

offense did not increase either the statutory maximum or the minimum

mandatory sentence.   Therefore, these issues did not need to be

submitted to the jury under *Alleyne*.   Appellate counsel is not

constitutionally ineffective for not raising what would have been a meritless

issue on appeal. *Brown v. United States*, 720 F.3d 1316, 1335 (11th Cir.

2013); *Shere v. Sec'y Fla. Dep't of Corr.*, 537 F.3d 1304, 1311 (11th Cir.

2008).   No relief is warranted.

### *Ground Six*

Barber contends that his trial counsel was constitutionally ineffective

and committed "fraud on the court" when counsel signed the Restitution

Stipulation without Barber's knowledge or consent.   (ECF No. 209).   The

Stipulation, signed by both defense counsel and AUSA Nesmith provides

that the parties stipulate "that a reasonable estimate of the loss sustained

by the Internal Revenue Service, as a result of the offenses of conviction is

$124,938 and both parties consent without objection to the entry of an

order of restitution to be entered as a part of the judgment and sentence in

this case.."   (ECF No. 209).   The agreement was signed on August 21,

2013.

After imposing sentence on June 26, 2013, the court addressed the

issue of restitution.   (ECF No. 207 at 52.)   It noted that the Paragraph 120

of the PSR concluded that the restitution due the IRS was $124,938,

significantly less than the total intended loss of $791,000.    Neither party offered any objection and the court pronounced that "Mr. Barber is ordered to make restitution to the IRS in that amount."    (ECF No. 207 at 52).

The parties did not agree on the amount of restitution due Wells Fargo Bank. The Government offered the possibility that the parties might be able to come up with a stipulation as to Barber's restitution obligation, so the Court stated that it would defer the calculation of restitution to a separate hearing.   (ECF No. 207 at 53, 56).   The Court noted in closing that the parties had agreed to the amount of restitution due to the IRS, but advised the parties that the Court intended to wait until the Wells Fargo restitution was decided and then enter a single, complete restitution order. (ECF No. 207 at 58.)

Thus, the August 21, 2013 stipulation merely memorialized what occurred at sentencing.    Through the omission of any additional restitution obligation, it was obvious that the parties agreed that Barber owed no additional restitution.   The Court held a status hearing regarding the restitution on August 22, 2013.   The order that followed reflected that

Barber would owe no restitution to Wells Fargo, because the bank had decided not to pursue restitution in the criminal case.   (ECF No. 210.)

In Barber's reply, he confuses the issues of restitution and forfeiture as he references the "Stipulated Motion for Entry of Preliminary Order of Forfeiture and Forfeiture Money Judgment."   (ECF No. 167.)   There is no basis for his claim of "fraud on the court" with respect to counsel's signing of the restitution agreement, and he is not entitled to relief on this claim.

### *Ground Seven*

In Ground Seven, Barber questions whether the Government "was operating under a constitutionally flawed interpretation of law when it selectively prosecuted him in the instant case."   (ECF No. 247 at 6.)   He appears to suggest that the Government improperly "targeted" him, comparing his situation to that of corporate entities such as General Motors or Toyota who were not prosecuted for what he claims was "similar conduct."   Barber argues that the Justice Department's failure to criminally prosecute any individuals from GM for allegedly concealing a deadly safety defect from U.S. Regulators, and of Toyota Corporation for its "unintended acceleration issue," suggests that the Government's decision to prosecute

him, rather than the corporation, was "selective prosecution." (ECF No. 249 at 15-16.) The misconduct of which GM and Toyota were accused is in no way similar to the tax fraud of which the jury convicted Barber. Having failed to identify similarly situated comparators, he cannot establish a claim of selective prosecution. *See United States v. Brantley*, 803 F.3d 1265, 1271 (11th Cir. 2015). Counsel was not constitutionally ineffective for failing to raise a meritless claim.

### *Ground Eight*

Barber says that counsel was constitutionally ineffective for failing to pursue a plea offer. He claims that counsel's "failure to discuss with Movant or attempt to obtain a 'written plea offer' with AUSA Nesmith when requested to do so." (ECF No. 249 at 17-18.) He speculates that counsel was derelict in his duties on order to maximize his CJA attorney fees by taking Barber's case to trial.

*Strickland*'s two-part test applies to guilty pleas. *Lafler v. Cooper*, 566 U.S. 156, 162-63 (2012) (citing *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)). The Sixth Amendment right to the effective assistance of counsel extends specifically "to the negotiation and consideration of plea offers that

lapse or are rejected." *In re Perez*, 682 F.3d 930, 932 (11th Cir. 2012)

(citing *Missouri v. Frye*, 566 U.S. 133, 138-145 (2012); *Lafler*, 566 U.S. at

163).   A defendant who claims that ineffective advice led him to reject a

plea offer must show that but for ineffective assistance of counsel, he

would have accepted the plea, and that the conviction or sentence or both

under the terms of the plea offer would have been less severe than under

the judgment and sentence that were imposed.   *Lafler*, 566 U.S. at 164.

A defendant's "after the fact testimony concerning his desire to plead,

without more, is insufficient to establish" prejudice.   *Pericles v. United

States*, 567 F. App'x 776, 782 (11th Cir. 2014) (quoting *Diaz v. United

States*, 930 F.2d 832, 835 (11th Cir. 1991)); *Rosin v. United States*, 786

F.3d 873 (11th Cir. 2015).   Finally, a defendant's insistence that he is

innocent is a "relevant consideration" that "makes it more difficult to accept

his claim" that he would have agreed to a plea deal.   *See Osley v. United

States*, 751 F.3d 1214, 1224–25 (11th Cir. 2014).

    In its response, the Government asserts that emails from defense

counsel to the Government's attorney reveal that counsel pursued,

obtained, and discussed a plea offer with Barber.   (ECF No. 254 at 24-25;

ECF No. 254-2, 254-3, 254-4).   Although the emails do not prove what counsel did or did not discuss with his client, and Barber insists that nothing in this vein was discussed with him, the emails certainly establish the existence of a plea offer.

Even were the court to accept as true Barber's statement that no plea "deal" was ever discussed with him, he has not shown he is entitled to relief.   First, he has not shown that he would have accepted a plea offer because of his unwillingness to admit his guilt.   The courts in this district require a defendant to admit guilt in order to enter a plea of guilty.   *See Osley v. United States*, 751 F.3d 1214, 1224 (11th Cir. 2014) (holding that a defendant's "claim that he would have ple[aded] guilty had he been properly informed is . . . undermined by his repeated claims of innocence.); *James v. United States*, 623 F. App'x 973, 976 (11th Cir. 2015).   The record reflects that after Barber's conviction at trial and through the date the PSR was prepared, he had not admitted to the charged conduct.   (ECF No. 189, PSR ¶ 45.)   Barber's comments to the Court at sentencing suggested he did not take responsibility for anything beyond some "mismanagement."   (ECF No. 207 at 32-33).   In fact, the Court observed

that Barber remained completely unapologetic, and even proud of the efforts that he undertook.   (ECF No. 207 at 48.)   Even in Barber's reply to the Government's response he neither admits his guilt nor unequivocally states that he would have accepted a guilty plea, rather referring to the possibility as merely "fifty/fifty."   (ECF No. 258 at 19.)   Barber has not established that he would have agreed to, or the Court would have accepted, a plea of guilty, and he is not entitled to relief on this claim.

### *Ground Nine*

Barber claims that counsel failed to call witnesses in his defense and in support of his claim of actual innocence, or discuss a strategy before trial, both of which failures resulted in prejudice to him.   (ECF No. 247 at 7.)   Barber did not offer any support for his allegations in his initial motion and memorandum, instead referring only to "certain witnesses."   In his reply, Barber offers the name of a few individuals.   He asserts that trial counsel failed to follow up with Porcha Kemp, one of his former associates, although he does not suggest what her testimony would have been or how it might have helped his case.

He also faults counsel for failing to subpoena Antoinette Monroe and Meshundrea Turner, whose favorable testimony Barber claims in his reply "would have dispelled the prosecution's dependence on testimony of taxpayers who escaped civil or criminal liability by maintaining lack of knowledge of false claims in their tax returns."   (ECF No. 258 at 20.)   Precisely what Barber means by this assertion is unclear, but in light of the evidence against him at trial, a failure to call these two witnesses does not undermine confidence in the proceedings.

Barber also asserts that counsel failed to interview the "plethora of potential witnesses" the Government provided in its discovery, and that there were "[s]ome very prominent professional and business people who would have been great character witnesses" whom counsel should have interviewed.   (ECF No. 258 at 20.)   Again, his conclusory assertion does not suggest, much less prove, how such interviews would have altered the outcome of the proceedings.   He is not entitled to relief.

### *Ground Ten*

Barber contends that counsel performed below constitutional standards when he failed to request that the Court instruct the jury that it

could convict him of the lesser included offense of aiding and abetting

rather than the substantive crime of tax fraud.   He believes that this would

have led to a less severe sentence because an aider and abettor "is

punished less harshly than tax preparers for equal conduct and omissions

are punished less than affirmed acts."   (ECF No. 249 at 20).   Barber is

mistaken in his assertion that the Court did not give an aiding and abetting

instruction, as well as his statement of the law.

> The Court gave the following instruction to the jury:

> That concludes my discussion of the specific counts.   Now let me turn to two general principles of criminal law under which a defendant may be responsible for an act that is actually carried out not by the defendant but by someone else.

> The first of these two general principles is the concept of directing another person or aiding and abetting another person.

> The law recognizes that, ordinarily, anything a person can do for one's self may also be accomplished by directing another person as an agent, or by acting together with or under the direction of, another person in a joint effort. So, if a defendant directs another person to act, or if a defendant aids and abets another person by willfully joining together with the person in the commission of a crime, then the law holds the defendant responsible for the act of the other person *just as though the defendant had personally performed the act.*

(ECF No. 231 at 50-51 (emphasis added)).   The requested instruction was given and there is no basis for relief.

### *Ground Eleven*

Barber asserts that trial counsel failed to perform adequate discovery and investigate in preparing for trial.   He claims that counsel did not receive "ALL discovery."   (ECF No. 247 at 8.)   In his memorandum he refers to unspecified evidence in the client files that supports the clients' claims for refund, unspecified files pertinent to the defense that were on Barber's computer and states that counsel should have reviewed the tax preparation software.   A review of the software, Barber claims, would have dispelled a number of the Government's theories and findings.   The only example he offers is that it would have demonstrated "how Household Help Income was used in error."   (ECF No. 249 at 20.)   It is not clear from Barber's assertion if he means to place the blame for the tax fraud and his resulting convictions on the tax software, but he has not shown that he is entitled to relief.

Barber contends that counsel failed to obtain and review copies of the Government witnesses' tax returns for the years prior and subsequent to

his indictment, and that this was relevant because the return amounts were "similar" although they were prepared by another preparer.  (ECF No. 249 at 21.)  The alleged similarity of surrounding years' returns does not prove an absence of fraud with respect to the returns charged in the indictment in the years that the outcome of the proceedings would have been different had counsel reviewed the items in question.

In his reply, Barber references "exonerating evidence" that was in the possession of the Government and "not included in the discovery provided to the defense by the Government."  (ECF No. 258 at 23.)  Again, having failed to offer anything other than this vague assertion, Barber has not shown he is entitled to relief.

### *Ground Twelve*

Barber next faults counsel for failing to obtain and review the IRS monitor's reports, which were prepared after each visit to his business. Barber contends that had counsel done this, he would have learned that Barber made "all necessary steps to comply and upgrade the quality and service at his tax business" after the visits.  (ECF No. 247 at 8.)  For instance, after the visits, Barber contends, each tax preparer was required

to obtain a Preparer's Tax ID number ("PTIN") which was entered on each return the individual prepared.   Furthermore, clients were required to attest that their returns were prepared using information that they had prepared. (ECF No. 249 at 22.)

Again, even if everything Barber now asserts is true, the purported after-the-fact corrections to the manner in which he ran his business do not prove his innocence of the charges in the indictment.   As noted by the court at sentencing, once the IRS found out about the irregularities in the tax returns, instead of stopping what he was doing, he found a different way to keep stealing money.   (ECF No. 207 at 46.)   Barber has not shown that counsel was constitutionally ineffective and no relief is warranted.

### *Ground Thirteen*

Barber contends that counsel lacked technical skills to operate modern-day courtroom technology and was computer illiterate, and that because of this, his performance was constitutionally ineffective. He claims that as a result, counsel did not present any documents at the trial.   (ECF No. 249 at 22.)   He does not suggest what document or documents counsel could or should have presented that would have altered the

outcome of the proceedings.    Having failed to establish that counsel's performance was constitutionally deficient under *Strickland*, he is not entitled to relief.

### Petitioner's Motion for Leave to Amend

On May 22, 2018, Barber moved for leave to amend his pending § 2255 motion to add four new and additional claims of ineffective assistance of counsel.    (ECF No. 271.)    He asserts that counsel was ineffective for failing to review the Presentence Investigation Report with him prior to sentencing, for failing to make certain objections to the PSR, for failing to move for a concurrent sentence with a pending state charge and for not requesting a new jury pool after a prospective juror made prejudicial comments during jury selection.    These claims, which Barber sought to add more than one year after his judgment and conviction became final, are facially untimely.    28 U.S.C. § 2255(f).

The court may consider the untimely claims only if the new amended claims relate back in time to the initial petition.    Rule 15(c) of the Federal Rules of Civil Procedure provides that:

> An amendment to a pleading relates back to the date of the original pleading when:

> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction or occurrence set out– or attempted to be set out– in the original pleading;

Fed.R.Civ.P. 15(c)(1)(B).   Thus, in order for facially untimely claims in an amended or supplemental § 2255 motion to be considered on their merits, they must arise from the same set of facts as the original claims, not from separate conduct and occurrences in both time and type.   *Davenport v. United States*, 217 F.3d 1341, 1344 (11th Cir. 2000); see also *Mayle v. Felix,* 545 U.S. 654, 664 (2005) (holding that so long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order); *Jeffries v. United States,* 748 F.3d 1310, 1314 n.3 (11th Cir. 2014) (citing *Davenport*).   Claims of ineffective assistance of counsel in an amended motion which arose from separate conduct and occurrences in both time and type from those alleged in an original motion do not relate back.   *Davenport v. United States*, 217 F.3d 1341, 1346 (11th Cir. 2000) (citing *United States v. Craycraft*, 167 F.3d 451 (8th Cir. 1999) (holding that a claim that counsel was ineffective for failing to file an appeal did not relate back to claim that counsel failed to pursue a downward departure or object to the kind of drugs at issue); *United States*

*v. Duffus*, 174 F.3d 333 (3d Cir. 1999) (holding that a claim that counsel

was ineffective for failing to pursue a motion to suppress did not relate back

to motion claiming that counsel was ineffective for failing to challenge

sufficiency of the evidence on appeal or to object to the use of recently

amended guidelines in calculating his sentence); and *United Sttes v.*

*Pittman*, 209 F.3d 314 (4th Cir. 2000) (holding that two new ineffective

assistance of counsel claims did not relate back to three claims raised in

the timely § 2255 motion)); see also *Chery v. United States*, Case No. 17-

11544,   2018 WL 3323316 (11th Cir. Jul. 6, 2018) (following *Davenport*).

The new claims that Barber seeks to raise in his amended petition involve

"separate conduct and occurrences in both time and type" from the

fourteen claims raised in his original petition.   *Davenport*, 217 F.3d at

1346.   Therefore, they are time-barred, and his motion to amend is denied.

## <u>Conclusion</u>

Based upon the foregoing reasons, the Court concludes that Barber

has not shown that any of the claims raised in his motion to vacate, set

aside, or correct sentence pursuant to 28 U.S.C. § 2255 have merit or that

an evidentiary hearing is warranted.   His motion should be denied in its

entirety.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides

that "[t]he district court must issue or deny a certificate of appealability when

it enters a final order adverse to the applicant," and if a certificate is issued

"the court must state the specific issue or issues that satisfy the showing

required by 28 U.S.C. § 2253(c)(2)."   A timely notice of appeal must still be

filed, even if the court issues a certificate of appealability.   Rule 11(b), §

2255 Rules.

After review of the record, the court finds no substantial showing of the

denial of a constitutional right.   § 2253(c)(2); Slack v. McDaniel, 529 U.S.

473, 483–84 (2000) (explaining how to satisfy this showing) (citation

omitted).   Therefore, it is also recommended that the court deny a certificate

of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final

order, the court may direct the parties to submit arguments on whether a

certificate should issue."   If there is an objection to this recommendation by

either party, that party may bring this argument to the attention of the district

judge in the objections permitted to this report and recommendation.

Accordingly, it is **ORDERED:**

1. Barber's Motion for Preference (ECF No. 269) is **DENIED.**

2. Barber's Motion for Leave to Amend (ECF No. 271) is **DENIED as**

**untimely**.

And based upon the foregoing, it is respectfully **RECOMMENDED** that:

1.      The "Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or

Correct Sentence by a person in Federal Custody" (ECF No. 247) should be

**DENIED**.

2.      A certificate of appealability should be **DENIED**.

**IN CHAMBERS** at Gainesville, Florida, this 7th day of August, 2018.


*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge


**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations
must be filed within fourteen (14) days after being served a copy
thereof.  Any different deadline that may appear on the electronic
docket is for the court's internal use only, and does not control.  A**

Case Nos.: 4:12cr17/RH/GRJ; 4:16cv9/RH/GRJ

**copy of objections shall be served upon all other parties.    If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.    *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.